**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                 :
ANDRE BROWN,                     :  Civil Action No.
                                 :  12-1685(NLH)(JS)
                                 :
          Plaintiff,             :
                                 :
     v.                          :  OPINION
                                 :
DELAWARE RIVER PORT AUTHORITY,   :
                                 :
          Defendant.             :
                                 :
_____
```

**APPEARANCES:**

JACQUELINE M. VIGILANTE
99 NORTH MAIN STREET
MULLICA HILL, NJ 08062
    *Attorney for plaintiff*

WILLIAM M. TAMBUSSI
CHRISTOPHER A. ORLANDO
BROWN & CONNERY LLP
360 HADDON AVENUE
WESTMONT, NJ 08108
    *Attorney for defendant*

**HILLMAN**, District Judge

    Plaintiff has brought claims of employment discrimination on account of race under Title VII for defendant's failure to promote him from police sergeant to lieutenant. Before the Court is defendant's motion for summary judgment. For the reasons expressed below, defendant's motion will be granted.

## I. BACKGROUND

    Plaintiff, Andre Brown, is an African-American police

sergeant with defendant Delaware River Port Authority ("DRPA").
On November 23, 2009, a vacancy announcement was posted in the
DRPA for the position of lieutenant ("initial posting").
Qualifying applicants must have previously served as sergeant
and, among other qualifications, have a bachelor's degree in a
related field.  Pursuant to DRPA policy, a vacancy notification
is required for each vacancy, and must be approved by the CEO
and circulated.  The vacancy notification which was circulated
and approved by the executive and administrative officers of the
DRPA included a position description for lieutenant, which had
been revised and approved in February 2009.  The notification
stated that there was one vacancy, created by the retirement of
Lieutenant Nottingham.

Plaintiff applied for the promotion along with seventeen
other sergeants, six of which, including plaintiff, had the
requisite education.  Two were African American, four were
Caucasian.  The initial posting remained open from November 23,
2009 through and including December 4, 2009.

Internal emails at DRPA show that the initial posting was
revised ("revised posting") on November 24, 2009 – the day after
the initial posting and six days before plaintiff or anyone else
applied for the position.  However, the applicants were not

informed of the revised posting until December 8, 2009, via email.  The DRPA internally posted the revised posting on December 9, 2009.  The revised posting reduced the educational requirement from a bachelor's degree to an associate's degree or documented law enforcement training within the past five years.  Plaintiff claims that the DRPA intentionally discriminated against him when it reduced the initial posting's educational requirement to enable lesser-qualified Caucasians to qualify for the position.

As a result of the revised posting, four applicants without bachelor's degrees made the cut, and were among the six applicants promoted; three were Caucasian (Bollendorf, Finnegan, and Luongo), and one was Hispanic (Santiago).  The other two selected candidates were Caucasian (O'Neil) and African-American (Cobbs).  Plaintiff was not selected for promotion to lieutenant.

## II.  DISCUSSION

### A. Jurisdiction

The Court has subject matter jurisdiction of this case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."[1]

---

1 Plaintiff points out that defendant failed to respond to plaintiff's supplemental statement of material facts in violation of Local Rule 56.1(a).  Local Rule 56.1(a) provides that if a non-movant provides a supplemental statement of material facts, the "...movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers."  Here, plaintiff submitted a supplemental statement of facts containing 143 paragraphs.  The Court will deem any material supplemental facts to be true if defendant has

Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).   Initially, the moving
party has the burden of demonstrating the absence of a genuine
issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986).   Once the moving party has met this burden, the
nonmoving party must identify, by affidavits or otherwise,
specific facts showing that there is a genuine issue for trial.
Id.   Thus, to withstand a properly supported motion for summary
judgment, the nonmoving party must identify specific facts and
affirmative evidence that contradict those offered by the moving
party.   Anderson, 477 U.S. at 256-57.   A party opposing summary
judgment must do more than just rest upon mere allegations,
general denials, or vague statements.   Saldana v. Kmart Corp.,
260 F.3d 228, 232 (3d Cir. 2001).

   **C. Title VII – Failure to Promote**

   Title VII prohibits employment discrimination on the basis
of race, color, religion, sex, or national origin.   42 U.S.C. §
2000e-2.   A claim of race discrimination under Title VII uses
the burden shifting framework established in McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 803-05 (1974).   Under that
framework, a plaintiff must first establish a *prima facie* case.

---

not disputed them in his statement of material facts.

The elements of a *prima facie* case depend on the facts of the particular case, and it cannot be established on a one-size-fits-all basis.  <u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 411 (3d Cir. 1999).

If the plaintiff presents a *prima facie* case, the burden of production then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  <u>Bray v. Marriott Hotels</u>, 110 F.3d 986, 990 (3d Cir. 1997).  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  <u>Id.</u>  This is a light burden.  <u>Id.</u>

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a

pretext for its actions, thus meeting the plaintiff's burden of persuasion.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 2097 (2000)).  The plaintiff must:

> demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] nondiscriminatory reasons."

Bray, 110 F.3d at 990 (citing Fuentes, 32 F.3d 765)(emphasis in original).

"An inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant's credibility or the employer's treatment of the employee."  Id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir. 1993)).  "The inference, along with the components of the plaintiff's prima facie case, allow a jury to conclude that the employer was actually motivated by illegal bias, but it does not compel that result."  Id. (citing Sheridan, 100 F.3d at 1066-67).  A plaintiff cannot prevail under Title VII merely by establishing that the employer made a decision that was wrong or mistaken.  Id. (citing Fuentes, 32 F.3d at 765).

In this case, it is undisputed that plaintiff has met the first three elements of his *prima facie* case: (1) he belongs to a protected category; (2) he applied for and was qualified for a job in an available position; and (3) he was rejected. Defendant argues that plaintiff cannot not meet the fourth element - that after the rejection, the position remained open and defendant continued to seek applications from persons of plaintiff's qualifications for the position. Defendant argues that while the application window to apply for the lieutenant position was open, the DRPA received twenty internal applications. Of those twenty, six were promoted to lieutenant on April 23, 2010. Three minorities applied for the position, and of those three, two received the promotion: one African-American and one Hispanic. Plaintiff was the one minority who did not receive the promotion. After the plaintiff was rejected, the position was not reopened.

Plaintiff argues that he can satisfy the fourth element because the DRPA filled the spot with a similarly situated applicant who was not of plaintiff's protected class. In support of his argument, plaintiff cites to an unpublished decision, <u>Profico v. Delaware River Port Authority</u>, No. 11-6961, 2013 WL 3283947, at *3 (D.N.J. June 27, 2013), which holds that

8

in order to present a prima facie case of discrimination, the plaintiff must establish that: "(1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was not promoted; and (4) Defendants filled the spot with a similarly situated applicant who was not of [plaintiff's] protected classes." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992)). The two cases cited in Profico, however, present a slightly different standard for the fourth element. In Fuentes, the Third Circuit ruled that "[i]n a case of failure to hire or promote under Title VII, the plaintiff first must carry the initial burden under the statute of establishing a prima facie case of [unlawful] discrimination...by showing... (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Fuentes, 32 F.3d at 763 (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824)). However, in Ezold, the Third Circuit stated, "[t]he plaintiff can establish a prima facie case by showing that... [iv] non-members of the protected class were treated more favorably." Ezold, 983 F.2d

at 523, <u>abrogated, in part, on other grounds</u>[2], <u>St. Mary's Honor</u>
<u>Ctr. v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407
(1993)).

Since the burden-shifting framework of both <u>Fuentes</u> and
<u>Ezold</u> are based on the Supreme Court's decision in <u>McDonnell</u>
<u>Douglas</u>, it is necessary to review the elements for a *prima*
*facie* case outlined by the Supreme Court in that case, which
states:

> The complainant in a Title VII trial must carry
> the initial burden under the statute of
> establishing a prima facie case of racial
> discrimination.  This may be done by showing (i)
> that he belongs to a racial minority; (ii) that
> he applied and was qualified for a job for which
> the employer was seeking applicants; (iii) that,
> despite his qualifications, he was rejected; and
> (iv) that, after his rejection, the position
> remained open and the employer continued to seek
> applicants from persons of complainant's
> qualifications.

<u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S.Ct. at 1824.

The Supreme Court, however, added a footnote to the fourth
element stating, "[t]he facts necessarily will vary in Title VII

---

2 The Supreme Court in <u>St. Mary's Honor Ctr.</u>, clarified step
three in the <u>McDonnell Douglas</u> framework by ruling that the
plaintiff must prove that unlawful discrimination was the
determinative factor underlying the adverse employment action
and may not just rely on evidence that defendant's articulated
reason is pre-textual.

cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." Id. at 802 n.13. This suggests that although the fourth element in a Title VII race discrimination case is whether "after [plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications[,]" other considerations may come into play. Moreover, the Third Circuit has provided guiding principles in applying the burden-shifting framework.  First, as a remedial civil rights statute, Title VII must be construed liberally and interpreted broadly.  Scheidemantle v. Slippery Rock University State System of Higher Educ., 470 F.3d 535, 538-39 (3d Cir. 2006).  "Second, there is a low bar for establishing a *prima facie* case of employment discrimination."  Id. (citing Ezold, 983 F.2d at 523; Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990)).

Thus, although the first inquiry in deciding if plaintiff made out a *prima facie* case will be whether the position remained open and the employer continued to seek applicants, the Court will also consider more broadly whether persons of the non-protected class were treated more favorably.  See Bray, 110

F.3d at 990 (outlining *prima facie* case for failure to promote plaintiff as requiring plaintiff to show that he: (1) belongs to a protected category; (2) applied for and was qualified for a job in an available position; (3) was rejected; and (4) after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position; but, also noting that "the position did not remain open after [plaintiff] was rejected.... However, this variance from the letter of the McDonnell Douglas Corp. formula is not relevant to our analysis. 'The facts necessarily will vary in Title VII cases, and the specification ... of the *prima facie* proof required ... is not necessarily applicable in every respect to different factual situations.'") (citing McDonnell Douglas Corp., 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.).

Here, defendant has provided undisputed evidence that after plaintiff was rejected, the position did not remain open and DRPA did not continue to seek applications. However, the initial posting was revised to reduce the educational requirements permitting more members of a non-protected class to qualify for the position. Due to the revised posting, plaintiff has presented evidence that defendant promoted six sergeants:

12

one African-American, one Hispanic, and four Caucasians.  It is undisputed that the four Caucasians are not members of a protected minority class.  Like plaintiff, they interviewed for the position of lieutenant.  Unlike plaintiff, three of the non-minority applicants did not hold bachelor degrees at the time of their applications and, therefore, benefitted from the revised posting.

Thus, plaintiff has demonstrated at the *prima facie* stage that non-members of the protected class were treated more favorably by the revised posting and by being promoted to lieutenant although they lacked the educational background achieved by the plaintiff.[3]  Therefore, plaintiff has presented evidence in support of his *prima facie* case and the burden now shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the failure to promote plaintiff.

Plaintiff's argument in support of his failure to promote claim appears to center on two decisions: first, the decision to

_____

3 In addition, DRPA's CEO, John Matheussen, used certain subjective criteria in deciding whom to promote.  The Third Circuit has held "that while objective job qualifications should be considered in evaluating a plaintiff's prima facie case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to the later stage of the McDonnell Douglas analysis." Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 320 (3d Cir. 2000).

reduce the educational requirement which allowed Caucasians who otherwise would not have been qualified to apply for the position of lieutenant; and second, the decision to promote Caucasians from the pool of applicants, particularly to promote sergeant Luongo who was rated below plaintiff by the interview panel.

With regard to the first decision, the initial posting for the position of lieutenant was revised on November 24, 2009 to lower the educational requirement from a bachelor's degree to an associate's degree or documented law enforcement training. Defendant states it was revised six days before plaintiff, or any other person, applied.  One of the reasons proffered by the defendant for the change was the bachelor's degree requirement could result in a shortage of candidates for the position. Although the initial posting only advertised for one vacancy, Chief McClintock knew that several upcoming officer promotions from lieutenant to captain, as well as other retirements would result in more vacancies.

The other reason proffered by the defendant for reducing the educational requirement is that waiving or failing to enforce the educational requirement of a bachelor's degree was common practice.  In some instances, the candidates were

required to obtain the requisite degree within five years of
being promoted, although the DRPA never terminated or demoted
officers who failed to obtain the educational requirement.
Defendant presented evidence that the DRPA promoted plaintiff
from corporal to sergeant in August 1999, even though he had not
obtained a bachelor's degree at the time of his promotion.[4]
Defendant has also presented evidence that at least as of 2004,
it was not mandatory that a candidate for lieutenant possess a
bachelor's degree at the time of the application, although
successful candidates would be required to obtain a bachelor's

---

4 Plaintiff received a bachelor's degree in 2001, and a master's
degree in 2003 in religious education from Covington Theological
Seminary.  The Court can take judicial notice that the United
States Department of Education has not recognized Covington
Theological Seminary as an accredited educational institution.
See http://ope.ed.gov/accreditation/; In re Wellbutrin SR/Zyban
Antitrust Litigation, 281 F.Supp.2d 751, 755 n. 2 (E.D.Pa. 2003)
(recognizing that courts may take judicial notice of federal
government or federal agency documents published on websites).
It is undisputed that plaintiff did not obtain a bachelor's
degree from an accredited college when he applied for the
position of lieutenant.  Defendant's position statement
submitted to the EEOC after plaintiff's EEOC charge filed in
October 2010 stated that the reason plaintiff was not selected
for promotion was that his college degrees were not issued by an
accredited university.  During the promotional process, however,
the DRPA did not reject plaintiff's degrees based on the
accreditation of the university and defendant has not raised
this as a defense in this litigation.  Therefore, the Court will
not question the sufficiency of the degree and will accept that
plaintiff has a bachelor's degree.

15

degree within five years of being selected.

Accordingly, defendant has presented legitimate, non-discriminatory reasons for the change in educational requirement.  There was a common practice of relaxing the educational requirements, and such practice was relied upon by the officers.  Also, there was a need to increase the applicant pool in order to fill six vacancies, rather than just one.  A reduction in the educational requirement increased the number of qualified applicants.

With regard to the second decision - defendant's decision not to promote plaintiff - defendant has offered evidence that the interview panel ranked Finnegan, Santiago and O'Neill as "excellent" which rating was higher than plaintiff's rating of "very good."  The interview panel gave Bollendorf the same rating as plaintiff.  DRPA's CEO, John Matheussen, considered other factors in his decision to promote Bollendorf, namely, his "excellent write up. Very good solid experience. Academic experience as well as training... significant number of years on the force."

The one candidate who was ranked lower than plaintiff was Luongo.  Luongo, who is Caucasian, received a ranking of "fair" by the interview panel which is lowest ranking.  The reason

16

offered by defendant for the promotion of Luongo over plaintiff
is that Matheussen admitted that he promoted Luongo because of
his personal relationship and dealings with him.  Although this
decision is based on favoritism rather than merit, the question
presented is whether defendant has offered a legitimate, non-
discriminatory reason.  The Third Circuit has suggested that
friendship or cronyism is not actionable under Title VII.  See
Parks v. Rumsfeld, 119 Fed.Appx. 382, 384 (3d Cir. 2005)
("friendship or cronyism is not a basis for relief under the
ADEA or Title VII.").  Therefore, at this stage in the burden-
shifting process, defendant has met its light burden of
proffering legitimate, non-discriminatory reasons for lowering
the educational requirement and for promoting Finnegan,
Santiago, O'Neill and Luongo.  Accordingly, the burden now
shifts back to the plaintiff to demonstrate that defendant's
reasons are pretext for discrimination.

Plaintiff argues that defendant's proffered reasons for
lowering the educational requirements - namely, to increase the
applicant pool, to be fair to existing sergeants, to garner a
more diverse applicant pool, and to meet the needs of additional
vacancies - do not "hold any water."  Plaintiff also argues that
Luongo, Finnegan, Bollendorf and Santiago were not more

17

qualified than plaintiff and argues that the subjective criteria used to promote them is susceptible to abuse and more likely to mask pretext.

Plaintiff states that the lowering of the educational requirement was "unprecedented" and resulted in making Luongo, Finnegan, Bollendorf and Santiago qualified for the position when they otherwise would not have been.  Although plaintiff compares the facts in this case to the decision in Profico in which the Court found the reduction in educational requirement "unprecedented," this case is distinguishable from Profico.  In Profico, the plaintiff presented evidence that the change in educational requirements for a payroll administrator was "unprecedented" and PATCO's human resources director testified that never had an applicant been able to obtain an educational requirement after-the-fact, and the change was "glaring." Profico, 2013 WL 3283947, at **1, 4.

Here, in 2004, the DRPA permitted candidates for lieutenant to apply without a bachelor's degree if they obtained their degree within five years.  Although the lowering of the educational requirement goes further than permitting candidates to obtain it within five years, there is no evidence that any successful candidate was ever terminated or demoted due to

18

failure to obtain a bachelor's degree, thereby lowering the requirement in practice.  This relaxation of the educational requirement was also permitted for candidates applying from corporal to sergeant and, which permitted plaintiff to be promoted without a bachelor's degree at the time he applied for sergeant.  As such, reducing the educational requirement is not completely "unprecedented," nor is it "glaring" under these facts.  Likewise, given that this was a common practice in the department, years before the vacancies for lieutenant occurred, it is reasonable to conclude that those in line for promotion would rely on a relaxing of the educational requirements.  The DRPA's Director of Public Safety, Michael Joyce, and Chief of Police, David McClintock, testified that the reason the position description was revised was to be fair to the pool of sergeants, many of whom did not have degrees.

Defendant's other proffered reason also does not indicate discriminatory intent.  Although the initial and revised postings only indicated one vacancy for lieutenant, there were in fact ultimately six vacancies that needed to be filled.  In May 2010, three Lieutenants were promoted to Captain and the other two retired after being passed over for promotion.  Plaintiff argues that at the time the CEO made the decision to

19

promote six people to the rank of lieutenant in March 2010,
there had been no vacancy notification issued for the five other
vacancies.  Even though an official notification was not issued,
it is undisputed that defendant knew about the upcoming
vacancies.  Chief McClintock testified that he knew that he
would have to fill six vacancies which occurred a few months
after the initial posting.  Thus, there is no discriminatory
intent shown in defendant's desire to increase the applicant
pool in order to fill six vacancies.

Plaintiff also argues defendant knew the racial make-up of
the applicants before they revised the posting because a year
later, in a memorandum drafted by Kelly Forbes, director of
human resources for DRPA, to John Matheussen, CEO of DRPA, dated
December 3, 2010, In the memorandum, written over a year after
the events at issue here and regarding a different job posting
altogether, Forbes states that the posting for lieutenant was
revised because the applicants did not reflect diversity.  The
memorandum written by Forbes was a comparison of the vacancy
process used to recruit sergeants in late 2010 to the vacancy
process used in 2009-2010 for lieutenant.  In the memorandum,
Forbes states that in 2009, there were six lieutenant vacancies
to fill but that they received only three or four applications

from candidates who had the requisite bachelor's degree and the "applications did not reflect a diversity of candidates (i.e., female and minority employees)... ."  The memorandum also states that due to the low number and lack of minority candidates, the educational requirement was waived which increased the pool from four to 16 and provided more diverse applicants.

Plaintiff relies on this memorandum as proof that the DRPA had to have known the racial make-up of the applicants in order to have changed the requirement to seek a more diverse pool of applicants.  It is undisputed, however, that the initial posting was revised on November 24, 2009, before any of the candidates submitted their applications.  Plaintiff has not presented any testimony from Forbes that would support the facts remembered (or misremembered) in her 2010 memorandum, and plaintiff has not presented any evidence that contradicts or questions the authenticity of Forbes's email on November 24, 2009, sent at the time of the revision, asking for clarification as to what related fields could substitute for the bachelor's degree requirement.

Although plaintiff states that a jury could believe the 2010 memo and disregard the other evidence, there has to be some basis to find that this factual dispute, if resolved in

21

Plaintiff's favor, would prove pretext either alone or in combination with other circumstantial evidence.  However, the December 2010 memorandum does not allow for that inference.  Of course, if it is literally true then it proves the opposite of discriminatory intent since the stated reason for the change was to increase diversity in the applicant pool.  If it is a post-hoc rationalization of the much earlier revised posting for lieutenant, and therefore evidence of pretext, it not only appears in an odd place but it is wholly contradicted by all the other evidence in the case that the revised posting was decided on before any candidates applied.  In other words, plaintiff has not demonstrated how any reasonable jury could find that the DRPA knew the background of the applicants before the revision, based on Forbes's 2010 memorandum, while at the same time being presented with uncontroverted evidence that the initial posting was revised the day after it was posted, and before any of the candidates submitted applications.  Plaintiff would have to present facts to discredit those emails and testimony, and plaintiff has not submitted any contradictory evidence.  See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). (A party opposing summary judgment must do more than just rest upon

mere allegations, general denials, or vague statements).[5]

The only reasonable inference is that the Forbes's 2010 statement is false, not intentionally so because that would not advance defendant's case, but because Forbes in 2010 misremembered or failed to accurately described what happened a year earlier. While "inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" may often demonstrate pretext and may be the only discoverable evidence of it, such discrepancies must allow "a reasonable factfinder [to] rationally .... infer" the defendant acted with the requisite intent. The seeming contradiction between the 2010 memo and the contemporaneous emails and draft revisions surrounding the revised posting is not a material factual dispute nor is the Court resolving a factual dispute against the non-moving party. This dispute is simply a red herring. See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769 (2007) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

5 Plaintiff has suggested that defendants could surmise who might apply based on the number of qualified sergeants. This, however, is plaintiff's speculation. There are no facts before the Court that could show that defendants knew who might apply.

genuine issue of material fact.") (quoting <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d
202 (1986)).

What plaintiff has shown is that if the educational
requirements were not changed, then only six applicants would
have been qualified and plaintiff would more than likely have
been promoted if the educational requirement were strictly
enforced.[6]  Plaintiff has also shown that others, with lesser
educational credentials, and in the case of Luongo, with a lower
interview rating, were promoted instead of him.[7]  What plaintiff

---

[6] Defendant, in its reply, states that there were seven, not
six, candidates who possessed bachelor degrees and, therefore,
if the bachelor's degree requirement was enforced, plaintiff may
not been chosen.  Defendant relies on the memorandum dated
February 25, 2010, to Chief McClintock regarding the lieutenant
selection process, which states that Sergeant Bollendorf has a
bachelor's degree.  However, the chart of "Lieutenant of Police
Minimum Qualifications" submitted by defendant as Exhibit 21,
indicates that Bollendorf did not have a bachelor's degree.
Further, in his sur-reply, plaintiff disputes the fact that
seven candidates had bachelor's degree.  On summary judgment,
the facts are viewed in the light most favorable to the
plaintiff, and here, defendant has not established that seven
candidates had bachelor's degrees as an undisputed fact.
[7] The candidates rated as excellent were: Edward R. Cobbs Jr.
(African-American), Michael Crowther (Caucasian), Robert J.
Finnegan (Caucasian), Johnny Santiago (Hispanic), Joseph O'Neill
(Caucasian), Joseph A. Zito (Caucasian).  Plaintiff, along with
four other candidates, was rated as "very good."  Two candidates
were rated as "good" and three candidates, including Michael
Luongo, were rated as "fair."

has not shown, however, is that defendant reduced the educational requirements to discriminate against him on the basis of race.  Defendant provided legitimate, non-discriminatory reasons for reducing the educational requirement.  Defendant has also shown that four of the candidates received a higher rating than plaintiff, and one received the same rating as plaintiff.  With regard to Luongo, who was ranked lower than plaintiff, Matheussen testified that he was friends with Luongo's father and it was Matheussen's subjective decision to promote Luongo rather than plaintiff.[8]  While a decision based on favoritism instead of merit is often unfair, unwise, and objectionable as a matter of good public administration often leading to unfortunate results – and in some ways a remarkable admission that should raise substantial concerns about the employment practices of an important governmental body with law

---

8  "Subjective evaluations are more susceptible of abuse and more likely to mask pretext."  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 320 (3d Cir. 2000).  Because subjective criteria entered into the decision-making, the Court is warranted in undertaking a careful analysis of possible impermissible motivations.  See Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (citing Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003)); Goosby, 228 F.3d at 321 ("...cloaking [subjective] criteria with an appearance of objectivity does not immunize an employment decision from a claim of discrimination.").  Despite this scrutiny, however, there is no evidence of racial animus toward plaintiff in DRPA's decision not to promote him.

enforcement powers - it is not necessarily discrimination on the basis of race.  While such subjective decision-making raises a suspicion, plaintiff must come forward with evidence that the decision was motivated by discriminatory animus.  Goosby, 228 F.3d at 321 ("a plaintiff can not ultimately prove discrimination merely because his/her employer relied upon highly subjective qualities (i.e. "drive" or "enthusiasm") in making an employment decision.").  Plaintiff has not done so.  At best, he has shown that the decision to promote Luongo was motivated by favoritism.  Favoritism, without discriminatory intent, is not actionable under Title VII.  See Parks, 119 Fed.Appx. at 384.

Although the plaintiff can criticize DRPA's decision to promote four candidates who do not possess bachelor's degrees as unfair, or even unsound, the legal question before the Court is whether sufficient evidence exists that the real reason plaintiff was not promoted was race discrimination.  See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].") (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996).  There is no evidence,

either alone or in combination with other evidence, that DRPA failed to promote plaintiff because of his race.  Therefore, DRPA's motion for summary judgment shall be granted.

**III. <u>CONCLUSION</u>**

Plaintiff has not provided sufficient evidence to defeat summary judgment on his race discrimination claim.  Nothing about plaintiff's proffered evidence shows that DRPA's failure to promote him to the rank of lieutenant was motivated by his race.  Without providing such evidence, plaintiff cannot overcome defendant's proffered reasons for lessening the educational requirements and for promoting other sergeants. Consequently, summary judgment must be entered in favor of defendant.  An appropriate Order will issue.


Date:   March 28, 2014                    s/Noel L. Hillman
                                          NOEL L. HILLMAN, U.S.D.J.

 At Camden, New Jersey

27